**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE ASSOCIATED PRESS; CABLE NEWS NETWORK, INC.; THE NEW YORK TIMES CO.; POLITICO LLC; AND WP CO., LLC, d/b/a THE WASHINGTON POST FOR ACCESS TO CERTAIN SEALED WARRANT MATERIALS | Case No. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PUBLIC ACCESS TO CERTAIN SEALED WARRANT MATERIALS**

BALLARD SPAHR LLP

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com

1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press, Cable News Network, Inc., The New York Times Co., POLITICO LLC and WP Co., LLC, d/b/a the Washington Post*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ...........................................................................................................................2

I.      The Prosecution of Michael Cohen.................................................................................2

II.     The Records Sought By The Media Coalition ..................................................................3

ARGUMENT .................................................................................................................................4

I.      THE PUBLIC'S FIRST AMENDMENT AND COMMON LAW RIGHTS
        OF ACCESS ATTACH TO THE WARRANT MATERIALS AND
        CANNOT BE OVERCOME HERE ..................................................................................4

        A.      The First Amendment Provides A Right Of Access To Warrant
                Materials ................................................................................................................6

        B.      The Common-Law Right Of Access Also Applies To Warrant
                Materials ................................................................................................................8

        C.      No Compelling Interest Justifies The Continued Blanket Sealing Of
                The Warrant Materials ...........................................................................................8

        D.      The Public's Interest In Disclosure Outweighs Any Need For Secrecy
                Of The Warrant Materials .....................................................................................12

II.     THE COURT SHOULD NOT ALLOW INDEFINITE SEALING
        PREMISED ON THE EXISTENCE OF AN ONGOING INVESTIGATION .................14

CONCLUSION.............................................................................................................................16

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*In re Application of N.Y. Times Co.*,
   585 F. Supp. 2d 83, 88 (D.D.C. 2008) ................................................................ *passim*

*In re Application of WP Co.*,
   201 F. Supp. 3d 109 (D.D.C. 2016) ..................................................................... *passim*

*In re Application of WP Co.*,
   No. 16-mc-351 (BAH), 2016 WL 1604976 (D.D.C. Apr. 1, 2016) ..............................5, 6, 11

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*,
   746 F.3d 1082 (D.C. Cir. 2014) ...................................................................................13

*Globe Newspaper Co. v. Super. Ct.*,
   457 U.S. 596 (1982)...................................................................................................6, 8

*In re McClatchy Newspapers, Inc.*,
   288 F.3d 369 (9th Cir. 2002) .........................................................................................11

*Metlife, Inc. v. Fin. Stability Oversight Council*,
   865 F.3d 661 (D.C. Cir. 2017) .................................................................................12, 13

*Monitor Patriot Co. v. Roy*,
   401 U.S. 265 (1971)........................................................................................................13

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978).........................................................................................................8

*Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*,
   156 F.3d 940 (9th Cir. 1998) .........................................................................................14

*Press-Enter. Co. v. Super. Ct.*,
   478 U.S. 1 (1986)..............................................................................................................6

*Press-Enter. Co. v. Super. Ct.*,
   464 U.S. 501 (1984)..........................................................................................................8

*In re Search Warrant for Secretarial Area Outside Office of Gunn*,
   855 F.2d 569 (8th Cir. 1988) ...........................................................................................5

*In re Search Warrants Issued on May 21, 1987*,
   No. 87-186 (JHG), 1990 WL 113874 (D.D.C. July 26, 1990) .................................5

*In re Searches of Semtex Indus. Corp.*,
   876 F. Supp. 426 (E.D.N.Y. 1995) ................................................................................15

*In re Special Proceedings*,
   842 F. Supp. 2d 232 (D.D.C. 2012) ...............................................................11, 12

*United States v. Bus. of Custer Battlefield Museum & Store* (*Custer Battlefield*),
   658 F.3d 1188 (9th Cir. 2011) ...........................................................................4, 5, 8

\*United States v. Cohen*,
   --- F.Supp.3d ---, 2019 WL 472577 (S.D.N.Y. Feb. 7, 2019) ....................... *passim*

\*United States v. Hubbard*,
   650 F.2d 293 (D.C. Cir. 1980) ...........................................................................12

*United States v. Loughner*,
   769 F. Supp. 2d 1188 (D. Ariz. 2011) ...............................................10, 11, 12, 15

*United States v. Moten*,
   582 F.2d 654 (2d Cir. 1978)................................................................................14

*United States v. Sealed Search Warrants*,
   868 F.3d 385 (5th Cir. 2017) .............................................................................5, 7

*United States v. Strevell*,
   No. 05-CR-477(GLS), 2009 WL 577910 (N.D.N.Y. Mar. 4, 2009) ....................15

*Virginia Dep't of State Police v. Wash. Post*,
   386 F.3d 567 (4th Cir. 2004) .........................................................................9, 10, 12

*Wash. Post v. Robinson*,
   935 F.2d 282 (D.C. Cir. 1991)...........................................................................10, 12

**Statutes & Other Authorities**

Fed. R. Crim. P. 41(i)...........................................................................................4, 5

## PRELIMINARY STATEMENT

The prosecution of a sitting president's personal attorney for a string of felonies including lying to Congress and violating campaign finance laws by paying hush money to the president's alleged mistress is undeniably one in which the public's interest in receiving information is paramount.  Through this action, The Associated Press ("AP"), Cable News Network, Inc. ("CNN"), The New York Times Company ("The Times"), POLITICO LLC ("Politico") and the WP Co., LLC, d/b/a/ the Washington Post (the "Post") (collectively, the "Media Coalition") seek to unseal court records concerning the prosecution of Michael D. Cohen ("Cohen") to provide more information to the American public about this important matter.

Specifically, the Media Coalition seeks to vindicate the public's First Amendment and common-law rights of access to the warrants, applications, supporting affidavits, and returns relating to all search, seizure or Stored Communications Act warrants relevant to the Cohen prosecution (the "Warrant Materials").  The U.S. District Court for the Southern District of New York has released redacted versions of such materials related to warrants involving Cohen executed in that district.  *See United States v. Cohen*, --- F.Supp.3d ---, 2019 WL 472577, at *1 (S.D.N.Y. Feb. 7, 2019).

The Warrant Materials should be released because they are records to which the public has qualified rights of access under both the First Amendment and the common law.  The First Amendment access right can be overcome only by a showing that secrecy is necessary to protect a compelling interest and any sealing is narrowly tailored to serve that interest.  To be sure, there are significant interests that arguably may be at stake, such as protecting the integrity of any ongoing investigations, the identities of confidential informants and the privacy of potentially innocent people.  Those interests, however, are insufficient to overcome the overwhelming public interest in these materials and can in any event be served by narrowly tailored redactions

to the documents.  Under the common law, courts balance the public's right to information about the workings of the criminal justice system against the legitimate countervailing interests of the government.  In this case, that balance tips decisively in favor of the public.  This Court, therefore, should order the Warrant Materials to be released, subject only to those precisely targeted redactions necessary to protect greater interests.

## BACKGROUND

### I.       The Prosecution of Michael Cohen

The details of the Cohen prosecution are well known, so the Media Coalition will limit its discussion to the most salient facts.  On April 9, 2018, the FBI performed searches of the residence, hotel room, office, safe deposit box, mobile phones and electronic communications of Cohen, who had been President Donald Trump's personal attorney for more than a decade. *Cohen*, 2019 WL 472577, at *1; *see also, e.g.*, Matt Apuzzo, *F.B.I. Raids Office of Trump's Longtime Lawyer Michael Cohen; Trump Calls It 'Disgraceful'*, N.Y. TIMES (Apr. 9, 2018), https://www.nytimes.com/2018/04/09/us/politics/fbi-raids-office-of-trumps-longtime-lawyer-michael-cohen.html; Eli Watkins, *FBI raids Trump lawyer Michael Cohen's office, seizes Stormy Daniels documents, bank records*, CNN (Apr. 9, 2018), https://www.cnn.com/2018/04/09/politics/michael-cohen-fbi/index.html.

Months later, Cohen pleaded guilty to five counts of tax evasion, one count of making false statements to financial institutions and two counts of campaign finance violations based on his payment of $130,000 on Trump's behalf to buy the silence of an adult film actress who says she had an affair with Trump.  *Cohen*, 2019 WL 472577, at *1; *see also, e.g.*, Erica Orden et al., *Michael Cohen implicates Trump in hush money scheme*, CNN (Aug. 22, 2018), https://www.cnn.com/2018/08/21/politics/michael-cohen-plea-deal-talks/index.html.  In a separate case brought by the Office of Special Counsel Robert Mueller, Cohen later pleaded

guilty to making false statements to Congress in violation of 18 U.S.C. 1001(a)(2) for lying about the Trump Organization's efforts during the 2016 campaign to strike a deal to build a Trump Tower in Moscow.  *See generally* Information, *United States v. Cohen*, No. 18-CR-850 (S.D.N.Y. Nov. 29, 2018), https://www.justice.gov/file/1115596/download.  He was sentenced to three years in prison and ordered to forfeit $500,000 and pay nearly $1.4 million in restitution. *See* Laura Nahmias & Darren Samuelsohn, *Michael Cohen sentenced to 3 years in prison*, Politico (Dec. 12, 2018), https://www.politico.com/story/2018/12/12/cohen-sentenced-to-3-years-in-prison-1060060.

## II.    The Records Sought By The Media Coalition

After Cohen's guilty pleas, several news organizations (including three members of this Media Coalition) asked the U.S. District Court for the Southern District of New York to unseal copies of the warrants, warrant applications and supporting affidavits in the cases against Cohen (which had been consolidated for sentencing).  *Cohen*, 2019 WL 472577, at *1.  The court granted the request in part and ordered those warrant materials released with redactions to shield the identities of law enforcement agents and some unindicted persons and to protect ongoing investigations.  *Id.* at 6-8, 14.

The materials released in the Southern District of New York (the "S.D.N.Y. Materials") made reference to several warrants approved in this District by Chief Judge Beryl Howell that were sought by the Special Counsel's Office as part of its probe of Russia's attempts to influence the 2016 elections (the "Russia Investigation").  The warrants referenced in the S.D.N.Y. Materials are:

- No. 17-mj-00503, issued on July 17, 2017, for emails in a gmail account associated with Cohen that were sent or received between January 1, 2016 and July 18, 2017;

- No. 17-mj-00570, issued on August 8, 2017, for content stored in an iCloud account associated with Cohen;

- No. 17-mj-00855, issued on November 13, 2017, for emails in the Cohen gmail account sent or received between June 1, 2015 and November 13, 2017; and

- No. 17-mj-00854, issued on November 13, 2017, for emails in another Cohen email account sent or received between the opening of the account and November 13, 2017.

In this action, the Media Coalition seeks records associated with the application for, issuance of, and returns regarding each of these four warrants, as well as the same materials for any other warrants issued in this District related to the Cohen prosecution that remain publicly unknown. For those Warrant Materials produced to Cohen in discovery, the Media Coalition respectfully requests access to those materials in the form produced to Cohen.

## **ARGUMENT**

The public has a presumptive, albeit qualified right of access to search warrant materials that is particularly urgent in this case given the importance of the Cohen prosecution to our democracy.  This qualified right, which arises under both the First Amendment and the common law, requires the release – with redactions, where necessary – of the Warrant Materials.

**I.      THE PUBLIC'S FIRST AMENDMENT AND COMMON LAW RIGHTS OF ACCESS ATTACH TO THE WARRANT MATERIALS AND CANNOT BE OVERCOME HERE**

Warrants, including the applications, affidavits and returns in connection therewith, are presumptively public both under the law and as a matter of standard practice in this and other federal courts.  *See, e.g.*, *In re Application of WP Co.* (*In Re WP II*), 201 F. Supp. 3d 109, 121 (D.D.C. 2016) ("warrant applications and receipts are routinely filed with the clerk of court without seal" (quoting *In re Application of N.Y. Times Co.* (*In Re NYT*), 585 F. Supp. 2d 83, 88 (D.D.C. 2008))); *United States v. Bus. of Custer Battlefield Museum & Store* (*Custer Battlefield*), 658 F.3d 1188, 1193-94 (9th Cir. 2011) (same); Fed. R. Crim. P. 41(i) ("The magistrate judge to

whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the district where the property was seized.").  In this Court "the routine practice is to make warrant materials publicly available after a search has been executed and a return is available."  *In re NYT*, 585 F. Supp. 2d at 88 n.8.

Federal courts considering the question routinely have held that the public has a qualified right of access to warrant materials, though there has been some inconsistency in the courts' conclusions regarding the stage of the proceedings at which that right attaches and whether it arises under the First Amendment, the common law, or both.  *See, e.g.*, *In re Application of WP Co.* (*In re WP I*), No. 16-mc-351 (BAH), 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016) (recognizing First Amendment right of access to search warrant records issued during investigation that had been closed); *In re NYT*, 585 F. Supp. 2d at 87-88 (recognizing both First Amendment and common-law right of access to warrant materials after conclusion of investigation); *In re Search Warrants Issued on May 21, 1987*, No. 87-186 (JHG), 1990 WL 113874, at *6 (D.D.C. July 26, 1990) (recognizing common-law right of access to search warrant materials after indictment); *United States v. Sealed Search Warrants*, 868 F.3d 385, 390 (5th Cir. 2017) (common-law right of access can apply to pre-indictment warrant materials; trial court must determine whether to unseal on case-by-case basis); *Custer Battlefield*, 658 F.3d at 1193-94 (recognizing common-law right of access to warrant materials after completion of criminal investigation); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573-74 (8th Cir. 1988) (recognizing First Amendment right of access to search warrant materials in ongoing criminal investigation).  The D.C. Circuit has not directly ruled on the precise questions of (1) whether the right of public access to warrant materials attaches upon the

warrant's execution and return to the issuing court or (2) whether that access right instead

attaches only once the subject or target of the warrant has been indicted or pleaded guilty.  Under

the analysis set forth by the D.C. Circuit and applied by other courts in this district, however, the

First Amendment and common-law public access rights to warrant materials both attach upon

return, not at some later point in the prosecution.  And even if it were the case that these rights of

access attached only after the target of a warrant has been convicted or pleaded guilty, in this

case Cohen has pleaded guilty and been sentenced.

### A.     The First Amendment Provides A Right Of Access To Warrant Materials

It is well settled that "[t]he First Amendment guarantees a qualified right of public access

to criminal proceedings and related court documents."  *In re WP II*, 201 F. Supp. 3d at 117

(citing *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 603-04 (1982)).  This right of access

arises where the court answers two questions affirmatively: "(1) whether the place and process

have historically been open to the press and general public, and (2) whether 'public access plays

a significant positive role in the functioning of the particular process in question.'"  *In re NYT*,

585 F. Supp. 2d at 87 (citing *Press-Enter. Co. v. Super. Ct.* (*Press-Enterprise II*), 478 U.S. 1, 8-9

(1986)).  Applying this "experience and logic" test, courts in this district have recognized that a

First Amendment right of public access applies to warrant materials at the latest after an

investigation has concluded.  *In re WP I*, 2016 WL 1604976, at *2; *In re NYT*, 585 F. Supp. 2d at

88.[1]  Here, experience and logic compel the conclusion that the First Amendment provides a

right of access to the warrant materials the Media Coalition seeks regardless of whether the

overall investigation or investigations formally can be deemed "concluded."

---

[1] The court in *In re NYT* held that there was no ongoing investigation although the government argued that it had not "formally closed" the "Amerithrax" probe:  The court noted that the government believed the 2001 anthrax attacks were the work of one person, acting alone, and that person had committed suicide.  585 F. Supp. 2d at 88 n.7.

First, as discussed *supra*, warrant materials have long been presumptively public, usually upon the return of the executed warrant, both in the District of Columbia and other federal courts.  *In re WP II*, 201 F. Supp. 3d at 121; *In re NYT*, 585 F. Supp. 2d at 88 (noting that warrant materials have been publicly available as matter of "routine historical practice").  And, as Judge Lamberth recognized in *In re NYT*, the fact that there is a common-law right of access to warrant materials also meets the "experience" prong of the test.  585 F. Supp. 2d at 89 ("Therefore, the fact that there is a common law tradition of access to warrant materials—which is acknowledged by the government in this case—weighs strongly in favor of a First Amendment qualified right of access to warrant materials."); *see also infra* Section I.B.  Experience, therefore, counsels that warrant materials should be presumptively available to the public upon the warrant's execution and return to the magistrate, and in any event no later than the point where an indictment has been issued or a guilty plea entered.

Second, courts also have recognized several strong public policies that are served by public access to warrant materials and that accordingly satisfy the "logic" prong of the test.  As the Fifth Circuit recently observed, "the right of access promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness."  *Sealed Search Warrants*, 868 F.3d at 395; *see also In re NYT*, 585 F. Supp. 2d at 90 ("The fact that proceedings are open demonstrates to the public that judicial processes are fair and that there is nothing to hide.").  This openness "'gives assurance that established procedures are being followed and that deviations will become known' and corrected."  *Id.* (citation omitted).  Especially given the criticism by the President and his supporters of the Russia Investigation and prosecutions arising from it, as well as the searches related to Cohen, these public policy considerations firmly support the First Amendment right of

access to these materials now that Cohen has pleaded guilty and the Special Counsel has

concluded his work.

**B.      The Common-Law Right Of Access Also Applies To Warrant Materials**

The Supreme Court has recognized that, under the common law, the public has a

qualified right "to inspect and copy public records and documents, including judicial records and

documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnotes omitted).

This common-law right is "broader, but weaker" than the First Amendment access right. *In re*

*WP II*, 201 F. Supp. 3d at 118 (citation omitted).   Courts in the D.C. Circuit have consistently

held that warrant materials are "judicial records" subject to this common-law right of access

because they are "central to a court's probable cause determination." *Id.* at 129 (quoting *Custer*

*Battlefield*, 658 F.3d at 1193); *see also In re NYT*, 585 F. Supp. 2d at 87 n.2 (noting that

government had conceded that warrant materials are subject to common-law right of access).

**C.      No Compelling Interest Justifies The Continued Blanket Sealing Of The**
**Warrant Materials**

To overcome the public's First Amendment right of access, a party opposing disclosure

must demonstrate that keeping the records secret serves a compelling governmental interest and

is narrowly tailored to serve that interest. *Globe Newspaper*, 457 U.S. at 606-07; *In re NYT*, 585

F. Supp. 2d at 91.  The Supreme Court has directed that "[t]he interest is to be articulated along

with findings specific enough that a reviewing court can determine whether the closure order was

properly entered." *Press-Enter. Co. v. Super. Ct.* (*Press-Enterprise I*), 464 U.S. 501, 510 (1984).

It is likely that the government can articulate one or more compelling interests at stake

here, as it did in the Southern District of New York. *See Cohen*, 2019 WL 472577, at *5-8.  But

the continued categorical sealing of all of the Warrant Materials cannot properly be said to be

narrowly tailored to serve any such interest, which can instead be served by targeted redactions.

Because of the First Amendment rights involved and the pressing public interest in the Cohen prosecution, the government (or any other party seeking secrecy) should be required to show (1) what specific compelling interest is served by the sealing or redaction of each specific document and (2) why sealing, rather than redaction or other mitigation, is the most narrowly tailored means to serve that interest.  The Media Coalition respectfully submits that neither the government nor any other party will be able to justify blanket sealing of the Warrant Materials at issue here.

Perhaps the most obvious compelling interest the government might be expected to cite is the need to protect the integrity of an ongoing investigation, as it did in the Southern District of New York.  *See Cohen*, 2019 WL 472577, at *1.  There, the court noted that the Government's submissions show that the investigation regarding Cohen's tax evasion and false statements to financial institutions "appears to have concluded." *Id.* at *6.  The court said that the Government's *ex parte* filings indicated that the campaign finance investigation was continuing, *id.* at *5-6 & n.2, though the ruling unsealing the S.D.N.Y. Materials did not involve any materials exclusive to the separate false statement charge arising from the Russia Investigation, *id.* at 1 & n.1.

Concerns about the integrity of ongoing investigations are mitigated in this instance because the hush-money probe and the Russia Investigation are no secret – and the Special Counsel's investigation has concluded.  The Media Coalition does not seek in any way to jeopardize or impede the campaign finance investigation or any related probes.  But "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation." *Virginia Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004) (government must provide "specific underlying reasons for the district court

to understand how the integrity of the investigation reasonably could be affected by the release of such information" to justify sealing judicial records).

Releasing the warrant materials already provided to Cohen, for example, would be unlikely to jeopardize an ongoing investigation because they have been provided to a prominent target of that investigation who has been cooperating with the government for many months. Surely anyone who could possibly be implicated in any criminal activity by Cohen or the contents of the materials seized has known about that possibility since the raid on Cohen's premises last April.  Likewise, unsealing warrant materials directly related to other defendants who have been indicted or pleaded guilty would be unlikely to interfere with the investigation of those individuals.  Further, the release of information that already has been widely publicized by the news media cannot threaten an ongoing criminal investigation.  *Wash. Post v. Robinson*, 935 F.2d 282, 291-92 (D.C. Cir. 1991) (government did not meet its burden to justify sealing plea agreement to protect ongoing investigation when plea already had been reported by news media). To the extent the Warrant Materials contain specific pieces of information that the government can show would compromise a specific aspect of any ongoing investigation if publicly disclosed at this time, those specific pieces of information can and should be redacted to allow for the maximum possible public access to the rest of these judicial records.

Other interests that the government might assert are at stake include the need to guard the secrecy of grand jury proceedings and shield the identities of confidential informants.  The Media Coalition does not object to redactions or withholdings that are narrowly tailored to serve these interests, such as removing the names of and identifying information regarding confidential informants whose identifies, in fact, currently remain confidential.

Privacy considerations may in some limited circumstances qualify as a compelling

interest, but it bears emphasis that "privacy and reputational concerns typically don't provide sufficient reason to overcome a qualified First Amendment right of access." *United States v. Loughner*, 769 F. Supp. 2d 1188, 1196 (D. Ariz. 2011); *see also Cohen*, 2019 WL 472577, at *6-8. One situation in which privacy interests did rise to this level was presented in *In re WP II*, in which the court denied the Post's request to unseal warrant information related to an ancillary investigation involving the "sexual preferences and partners" of a cooperating witness in the investigation of campaign finance violations in the District. 201 F. Supp. 3d at 126-27. However, there is no indication here that any of the Warrant Materials related to Cohen or the broader Russia Investigation involve such highly intimate details that are not directly relevant to the core of the investigations – and, again, any such concerns could be adequately satisfied by redactions rather than indiscriminate sealing. Likewise, the privacy interests of potentially innocent third parties can be protected in the same way via targeted and specific redactions, as the Southern District of New York ordered. *Cohen*, 2019 WL 472577, at *7-8 (ordering redaction of identifying information regarding uncharged individuals who may be stigmatized by their association with criminal case); *see also In re WP I*, 2016 WL 1604976, at *2.

However, the nature of the Cohen case is such that many, if not most, of those potentially identified in the Warrant Materials are people who either already have been publicly identified (or identified themselves) in connection with the investigations or have a diminished privacy interest because they voluntarily sought public office and/or positions in the maelstrom of a hotly contested presidential campaign. *See In re NYT*, 585 F. Supp. 2d at 93 n.14 ("injury to official reputation is an insufficient reason for repressing speech that would otherwise be free" (quoting *In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 374 (9th Cir. 2002))). For example, federal prosecutors involved in convicting a sitting U.S. Senator on corruption charges that were later

11

vacated because of prosecutorial misconduct did not have a privacy interest in sealing a report about their misdeeds. *In re Special Proceedings*, 842 F. Supp. 2d 232, 246 (D.D.C. 2012) (noting that "the identity of the subjects was known from the outset of the investigation, the matters under investigation were largely known to the public from the outset and arose from the subject attorneys' conduct during the proceedings in a highly-publicized criminal trial"). Further, there is no compelling interest in protecting the "privacy" of facts that are already public. *Robinson*, 935 F.2d at 291-92; *Virginia State Police*, 386 F.3d at 579; *Loughner*, 769 F. Supp. 2d at 1196.

In sum, insofar as the public record reveals, there is no apparent interest at stake sufficiently compelling to justify the continued wholesale sealing of the Warrant Materials, and any compelling interests that conceivably may be implicated could be served by narrowly tailored redactions.

> **D.     The Public's Interest In Disclosure Outweighs Any Need For Secrecy Of The Warrant Materials**

In determining whether the strong common-law presumption in favor of public access requires unsealing of a particular judicial record, a court must "balance the government's interest in keeping the document secret against the public's interest in disclosure." *In re WP II*, 201 F. Supp. 3d at 118 (citation omitted).  Courts considering whether to order disclosure pursuant to the common-law right must weigh factors the D.C. Circuit first articulated in *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980):

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

12

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017); *accord In re NYT*, 585 F. Supp. 2d at 92; *WP II*, 201 F. Supp. 3d at 118.  Here, an analysis of the five relevant *Hubbard* factors[2] leads to the conclusion that the Warrant Materials also should be released pursuant to the common-law access right.

The first and second factors weigh heavily – and conclusively – against continued secrecy.  It is beyond debate that the public interest in access to the Warrant Materials could not be higher.  *See, e.g.*, *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) ("[I]t can hardly be doubted that the constitutional guarantee [of free speech] has its fullest and most urgent application precisely to the conduct of campaigns for political office.").   The Cohen prosecution goes to the heart of the integrity of the political process and the ability of the justice system to fairly and effectively investigate and, where necessary, prosecute potential crimes by those in positions of power.  *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014) (recognizing "weighty public interest in shining a light on the FBI's investigation of major political corruption" and importance of materials that "shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government").  The gravity and importance of the Cohen prosecution is among the highest in our nation's history, and therefore the public's interest in the transparency of that investigation is paramount to all but the most crucial constitutional considerations.

The third and fourth factors – any objections to unsealing, the identity of the objectors, and the strength of the objections – remain to be determined, but it is difficult to conceive of

---

[2] As Judge Lamberth explained, the sixth *Hubbard* factor was unique to that case, "in which a private party sought to prevent disclosure of documents recovered during a search."  *In re NYT*, 585 F. Supp. 2d at 92 n.13.

circumstances that would be sufficient to overcome the public interest in release of the Warrant

Materials.  As discussed *supra*, many of the individuals most directly implicated by the Warrant

Materials either have already been indicted or pleaded guilty, are beyond this Court's

jurisdictional reach, or are among the most powerful and public political figures of our time.

Consequently, any legitimate objections they may raise could adequately be addressed by

targeted redactions.  Finally, the risk of prejudice to the investigations or the prosecutions, while

not unimportant, pales in comparison to the public interest in disclosure and also may be

appropriately mitigated with any necessary redactions.

The public's common-law right to access the Warrant Materials, therefore, far outweighs

any countervailing considerations, and the blanket sealing of them should not continue.

## II.     THE COURT SHOULD NOT ALLOW INDEFINITE SEALING PREMISED ON THE EXISTENCE OF AN ONGOING INVESTIGATION

Finally, if the Court should determine that some of the Warrant Materials may remain

sealed to protect the privacy of one or more individuals or the integrity of one or more ongoing

investigations, the public should be allowed access to those materials once the justification for

sealing expires, either when the shielded individuals' identities become known and/or the

currently ongoing investigations are complete.  The criminal investigations involved in this

matter will not continue indefinitely; as the Second Circuit observed, "the government's interest

in its ongoing investigation does not ongo [sic] forever."  *United States v. Moten*, 582 F.2d 654,

661 (2d Cir. 1978); *see also Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 947 (9th

Cir. 1998) ("transcripts of public trial proceedings must be released when the factors militating

in favor of closure no longer exist").

To avoid ongoing relitigation of public access to these Warrant Materials, therefore, the

Media Coalition respectfully requests that, if any portions of the Warrant Materials are to remain

sealed, this Court retain jurisdiction to ensure that the records are made public promptly and automatically after the justification for their sealing expires.  The Media Coalition requests that this Court set a "sunlight date" for any remaining sealed portions of the Warrant Materials three months from the date of its order in this action, at which time the records would be automatically unsealed by the Clerk absent a showing by the Government or another interested party that continued sealing is justified.  Because openness, not secrecy, is the default condition for judicial records, such a sunlight provision would place the onus for continued sealing where it belongs: on the Government or other party who must persuade the Court that these public records must continue to be kept from public view.  Other courts – including the Southern District of New York in this instance – have imposed similar requirements.  *Cohen*, 2019 WL 472577, at *14 (ordering the Government to submit status report by May 15, 2019, explaining any need for continued redactions);  *see also, e.g.*,  *Loughner*, 769 F. Supp. 2d at 1197 (stating that "redacted information will be unsealed as soon as it becomes appropriate"); *United States v. Strevell*, No. 05-CR-477(GLS), 2009 WL 577910, at *7 (N.D.N.Y. Mar. 4, 2009) (setting a one-year sunshine date upon which sealing would expire "absent a timely motion to renew from the government" or defendant); *In re Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995) (ordering that warrant materials be unsealed if no indictment issued in case within three months subject to government's opportunity to explain *in camera* why continued sealing was necessary).

## **CONCLUSION**

For all of the foregoing reasons, the Media Coalition respectfully requests that this Court grant its motion and enter an order unsealing the Warrant Materials, and further that, if the Court determines that any portion of the Warrant Materials may remain sealed, the Court enter an order setting a sunlight date three months from the date of its order.


Respectfully submitted,

 Dated: March 26, 2019                    BALLARD SPAHR LLP


                                         By:    /s/ Jay Ward Brown
                                         _____

                                         Jay Ward Brown (D.C. Bar No. 437686)
                                         brownjay@balladspahr.com
                                         Matthew E. Kelley (D.C. Bar No. 1018126)
                                         kelleym@ballardspahr.com
                                         BALLARD SPAHR LLP
                                         1909 K Street, NW
                                         Washington, D.C. 20006-1157
                                         T: (202) 508-1136
                                         F: (202) 661-2299

                                         *Counsel for The Associated Press, Cable News
                                         Network, Inc., The New York Times Co.,
                                         POLITICO LLC and WP Co., LLC, d/b/a the
                                         Washington Post*